Jay M. Spillane (Bar No. 126364)
jspillane@spillaneplc.com
SPILLANE TRIAL GROUP PLC
468 N. Camden Drive
Second Floor
Beverly Hills, CA 90210
(424) 217-5980
(888) 590-1683 (fax)

Attorneys for Plaintiff Rajendra Mehta

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAJENDRA MEHTA,<br><br>  Plaintiff,<br><br>vs.<br><br>OUT OF THE BOX ENTEPRISES, LLC, a Texas Limited Liability Company,<br><br>  Defendant. | Case No.: 5:16-cv-107<br><br>**COMPLAINT TO SET ASIDE AND VACATE JUDGMENT FOR EXTRINSIC FRAUD OR MISTAKE** |

Plaintiff Rajendra ("Raju") Mehta avers:

1. The Court has jurisdiction over this action because it seeks in equity to vacate and set aside the October 30, 2012 Final Judgment in *Out of the Box Enteprises, LLC v. El Paseo Jewelry Exchange, Inc., et al.*, USDC C.D. Cal. 5:10-cv-01858-VAP-DTB (the "OOTB Action"), a judgment rendered by this Court under the Lanham Act. Further, this Court has power to declare the Final Judgment void and unenforceable under 28 U.S.C. § 2201.

2. Venue is proper in this District, in that the Final Judgment in the OOTB Action was rendered by this Court in this District.

3. Plaintiff Rajendra Mehta is an individual residing in Los Angeles County, California.

4. Defendant Out of the Box Enterprises, LLC ("OOTB") is a Texas Limited Liability Company which maintained its principal offices and operations in Riverside County, California.

5. OOTB filed its Complaint initiating the OOTB Action on December 2, 2010. The Complaint was against El Paseo Jewelry Exchange, Inc., El Paseo Jewelry, Inc., Rajendra Mehta and Ivan Kalensky. The Complaint averred that OOTB and the El Paseo companies were competitors in the gold buying business, in the Palm Desert area. The Complaint further averred that Mehta and Kalensky worked for the El Paseo companies. The Complaint was for false advertising under the Lanham Act and related California law false advertising theories. The gist of the Complaint was that the defendants falsely advertised that they were purchasing gold for 92% of its value, when in fact they paid significantly less. The Complaint averred that the false advertising drew customers away from OOTB and to the defendants, to OOTB's loss.

6. In the gold buying business, the business purchases gold objects from customers, including jewelry, bullion and coins, and sells the gold to smelting companies for a higher price, thus earning a profit.

7. The OOTB Action was tried in phases, to a jury and to the bench, commencing on July 11, 2012 and concluding on July 26, 2012.

8. OOTB had the burden of proving causation and damages in order to prevail at the trial.

9. OOTB attempted to meet this burden by presenting to the Court and jury evidence in the form of summary profit and loss reports generated by OOTB's accounting software, information prepared by OOTB or its bookkeepers, Tr. Ex. 98.

10. Trial Exhibit 98 showed that OOTB first earned receipts in September 2009. The exhibit reflected summary financial information through August 2011.

11. The Court permitted testimony concerning lost sales during the "false advertising period," from January 16, 2010, when the first 92% ad appeared, to September 15, 2010, the last 92% ad.

12. OOTB's expert opined that during the false advertising period the price of gold rose, from which he theorized that gold purchases by OOTB from gold sellers should have increased. He took summary figures for gold purchases from Ex. 98, a subset of costs of goods sold. He graphed those summary figures by month, and observed that these figures were less than the summary gold purchase figures reflected for October, November and December 2009. OOTB's expert then opined that the difference between expected gold purchases based upon the price of gold and actual gold purchases as reflected in Tr. Ex. 98 were entirely attributable to the 92% advertisements. He testified that, based upon the difference between the summary gold purchase figures in Tr. Ex. 98 and the gold purchases supposedly expected based upon gold prices,

OOTB lost profits from the reduced level of gold purchases in a sum in excess of $2 million.

13. OOTB's entire proof of causation and damages was thus dependent on the summary gold purchase figures disclosed by OOTB to the Court and jury in Tr. Ex. 98.

14. On information and belief, these gold purchase figures were known to be mistaken by OOTB, and constituted a fraud on the Court and jury.

15. On information and belief, the figures OOTB presented to the Court and jury was based upon gold purchases made by check. However OOTB testified that it also purchased gold by cash. If cash purchases had been added as a gold purchase cost in OOTB's books, one would have expected an increase in the total stated gold purchase cost. However, on information and belief, OOTB made massive unexplained journal entries to its books, entries that OOTB did not disclose to the Court or jury, that had the effect of massively <u>decreasing</u> the summary gold purchase figures during the periods in question.

16. On information and belief, OOTB did not reliably record cash gold purchase transactions in its accounting software, such that the summary gold purchase costs revealed to the Court and jury were mistaken and fraudulent.

17. On information and belief, the journal entries made in OOTB's books, which were not presented or explained to the Court or jury, materially altered the data that <u>was</u> presented to the jury, such that the information presented to the jury was the product of mistake or fraud.

18. Based on the summary gold purchase information presented by OOTB to the Court and jury in Tr. Ex. 98 and in its expert's testimony, the jury returned a verdict that the false advertising caused damage to OOTB. Based on the jury's verdict, this Court entered the Final Judgment.

## First Claim for Relief

## Set Aside and Vacate Judgment for Extrinsic Fraud and Mistake

19. For its First Claim for Relief, Plaintiff incorporates by reference the averments of ¶¶ 1-18 above.

20. The summary gold purchase figures in Tr. Ex. 98 solely underpinned OOTB's proof of causation and damages.

21. On information and belief, the information presented by OOTB to the Court and jury was mistaken and fraudulent, in that the summary information did not reliably or truly reflect gold purchases by OOTB.

22. For these reasons, the Final Judgment was procured by OOTB through mistake and fraud.

23. Plaintiff is entitled, in equity, to an order setting aside the Final Judgment on grounds of extrinsic mistake and fraud.

## Prayer

Plaintiff prays for entry of an order setting aside and vacating the Final Judgment, for costs of suit, and for such other and further relief as the Court may deem just.

DATED: January 20, 2016				SPILLANE TRIAL GROUP PLC

						By: _____
						Jay M. Spillane
						Attorneys for Plaintiff Rajendra Mehta